Allen R. KING (Plaintiff), Respondent,

v.

Calvin FURRY, A. J. Babcock and E. E. Williams, doing business as Farmington Auction Company (Defendants), Appellants.

No. 29979.

St. Louis Court of Appeals.

Missouri.

Nov. 5, 1958.

Motion for Rehearing or to Transfer to Supreme Court Denied Dec. 8, 1958.

J. O. Swink, Farmington, for appellants.

Roberts & Roberts, J. Richard Roberts, Farmington, for respondent.

JOHN K. REGAN, Special Judge.

This is an action for property damage caused by a collision between respondent's (plaintiff's) Pontiac automobile, driven by him, and two cattle, owned by one of the appellants (defendants), which had strayed onto the public highway from an enclosure owned by the appellants, and involves the "Stock Law" of Missouri, relative to restraining domestic animals from running at large. The verdict of the jury was in favor of respondent in the sum of $521.70. For convenience, the parties hereafter will be referred to in the capacities in which they appeared in the trial court.

Plaintiff's petition was in two counts, the first count alleging violation of the "Stock Law", section 270.010 RSMo 1949, V.A. M.S.; the second count being based on common-law negligence. The latter count was abandoned by plaintiff at the trial, since the cause was submitted to the jury only on violation of the "Stock Law." The answer was a general denial and a plea of contributory negligence.

The evidence revealed that on August 16, 1956, about midnight, plaintiff was driving his 1954 Pontiac coupe south on Highway No. 67 at a speed of around 50 to 60 miles per hour. As plaintiff topped a hill there were two cattle standing in the road and his car collided with the cattle, damaging the entire front end of his automobile. The automobile was not in condition to be driven after the collision. The car was towed to the Swisher Chevrolet Company in Fredricktown, Missouri, where it was repaired at a cost of $491.70, plus a $30 towing charge.

Plaintiff testified that he first saw the cattle when he was about 20 yards from them; that he applied his brakes but was not able to stop before hitting the cattle; that one of the cattle was in the southbound lane of the highway and the other about 2 or 3 feet in the northbound lane; that he was unable to avoid hitting the cattle by going onto the shoulder because of a light pole in the vicinity. Plaintiff stated he swerved slightly to the left in an attempt to avoid one cow, and thereby struck both—there not being sufficient space between the cattle to permit the passage of an automobile. The cattle were headed west across

the highway and turned their heads toward plaintiff's car. The head of each cow was struck by a headlight of the car.

Plaintiff's pleadings alleged that at all times pertinent to the issues the defendants owned and operated a sales barn and stock pens located on Highway No. 67 north of Farmington, Missouri. Further, plaintiff alleged that cattle belonging to the defendants and others were kept by defendants in said barn and pens. In their answer, the defendants admit both of these allegations.

The evidence adduced by the defendants demonstrated that a load of cattle had been delivered to the barn about 7:00 P.M. on August 16, 1956, and that these cattle were run through the barn and into the south stock pen. Defendant E. E. Williams testified that the cattle belonged to him, and not to the other defendants. He further testified that the other defendants were his partners in the operation of the Auction Barn. By Williams' testimony the defense showed that after the cattle were in the south stock pen Williams had examined the only two gates to the pen and they were secure. After counting the cattle Williams went to his home where he received a telephone call about 12:30 a. m. informing him that his cattle were loose on the highway.

When defendant Williams arrived at the barn after the accident he found the east gate of the south stock pen open, this being one of the gates previously checked by him. Williams testified that there were 40 or 45 head of cattle in the lot, all of which apparently strayed onto the highway, but only the two struck by plaintiff were involved in any collision with autos on the highway. Williams further testified that the first and only notice he had of the cattle being on the highway was after the collision occurred. There was other testimony that there had been no previous complaints of defendants' cattle being at large on the highway.

The defendants contend that the trial court erred in admitting into evidence plaintiff's exhibit No. 1, which is the repair bill from Swisher Chevrolet Company, citing section 490.680 RSMo 1949, V.A.M.S., and Ensminger v. Stout, Mo.App., 287 S.W. 2d 400.

The record reveals that plaintiff's exhibit No. 1 was admitted over the objection of the defendants. The defendants objected to the admission of the exhibit on the grounds that it was self-serving, a conclusion, a memorandum which witness Smith had used to refresh his memory, and that it contained facts and figures which the witness had not identified. The court overruled the objection and permitted plaintiff's counsel to show the exhibit to the jury. Defendants' counsel objected to the action of the court in permitting plaintiff's counsel to pass the exhibit to the jury for all the reasons previously set forth, and for the further reason that it had not been shown that the witness Smith had prepared the exhibit or had any knowledge of it whatsoever. This objection was likewise overruled.

An examination of the record shows that exhibit No. 1 was marked for identification immediately after John Joseph Smith, the service manager of the Swisher Chevrolet Company, had testified about the damage to plaintiff's Pontiac car and the work and parts necessary to repair it. This witness further testified that he examined the Pontiac before the work of repair was started, at which time he determined what parts were necessary for the repair job as well as all of the work which had to be done in order to complete the job. Smith also said he supervised the work on the car, and assembled the necessary parts which were used in repairing the Pontiac. He held the repair bill in his hand and testified from it in relation to the date the repairs were made. Smith then testified, without objection, that the whole bill for material and labor was $491.70; and that this was a reasonable price for both labor and material.

On cross-examination defendants' counsel asked Mr. Smith if he hadn't loaded the

bill a little, and Smith replied negatively. Smith was also asked about the Prestone that was placed in plaintiff's car, which fact had not been adduced on direct examination. The only other work which had been noted on exhibit No. 1, which had not been referred to in the testimony, was repainting the left side of the car, which was also brought out on cross-examination.

The evidence clearly showed that witness Smith was thoroughly familiar with the damage to plaintiff's car, having examined it in its damaged condition. Further, all parts needed for the repair of the car were assembled by Smith and installed under his supervision, so he was particularly qualified to testify as to the nature and extent of the damage as well as the reasonableness of the charge. However, exhibit No. 1 was not identified while Smith was on the stand other than by his comment that he had the repair bill and, testifying from the bill, the date the repairs were started. Nevertheless, as soon as Smith was excused from the witness stand plaintiff sought to introduce the repair bill over defendants' strenuous objection. An examination of exhibit No. 1 reveals that it contains a list of parts exactly as testified to by Smith, as well as painting done and Prestone replaced, as developed by defendants' cross-examination.

■ It is the Court's opinion that no error was committed in the admission of plaintiff's exhibit No. 1, which was a memorandum of which the witness had complete personal knowledge. See Smith v. Ray M. Dilschneider, Inc., Mo.Sup., 283 S.W. 2d 631; and Mann v. Stewart Sand Co., 211 Mo.App. 256, 243 S.W. 406, loc. cit. 408; also 25 C.J.S. Damages § 157, page 808.

The next assignment of error made by defendants is the court's action in permitting plaintiff to read the Missouri Stock Law to the jury. As authority for their position, defendants cite section 510.300 RSMo 1949, V.A.M.S.; McPeak v. Missouri Pacific R. Co., 128 Mo. 617, loc. cit. 644, 30 S.W. 170; State ex rel. Witte Hardware Co. v. McElhinney, 231 Mo.App. 860, 100 S.W.2d 36.

At the trial and in his brief counsel for defendants raised the point that it was the court's function to declare the law to the jury in written instructions at the close of the case. However, after the jury was sworn, plaintiff's counsel elicited an admission from defense counsel that the Stock Law was in full force and effect in St. Francois County, including the area in which the Farmington Auction Barn was located. The announced purpose of obtaining that admission at that time was for use in the opening statement. Although the opening statement has not been made part of the record, we can assume that the Stock Law was alluded to at that time by plaintiff without objection.

In Instruction No. 1 given by the court the Missouri Stock Law was fully covered, so that the only complaint that defendants have is the evidentiary advantage, if any, plaintiff obtained by reading the statute to the jury.

The Supreme Court of Missouri, in the case of Merrick v. Bridgeways, Inc., 362 Mo. 476, 241 S.W.2d 1015, 1019, said: "The practice of reading statutes to the jury is not to be commended, Hollenbeck v. Missouri Pac. R. Co., [141 Mo. 97, 38 S.W. 723, 41 S.W. 887]; Lewis v. Barnes [Mo.Sup., 220 S.W. 487]; nevertheless, in the absence of a plain demonstration of abuse of discretion and prejudicial effect, it has not been held to be reversible error when permitted, and in the circumstances of this case it may not be confidently said that the mere reading of the statutes was so prejudicial as to demand a new trial."

■ We are of the opinion that the trial court's action in permitting plaintiff's attorney to read the statute was not reversible error, although the practice is not to be encouraged.

Defendants contend that Instruction No. 1, as given by the trial court, was erroneous for the reason that said instruction contains some language of the Missouri Stock Law in quotation marks, thus giving undue prominence to the penalizing portion of the statute. Further, defendants say that Instruction No. 1 conflicts with Instruction No. 3 given at defendants' request.

Instruction No. 1, given by the court at plaintiff's request, is as follows:

"The Court instructs the jury that if you find and believe from the evidence that on or about the 16th day of August 1956, Allen E. King, was driving his automobile in a southernly direction on Highway No. 67 in St. Francois County, Missouri, and that at the time and place mentioned in evidence plaintiff's automobile collided with cattle on Highway No. 67, and if you further find and believe from the evidence that on said date the provisions described and known in the evidence as the Missouri Stock Law was in full force and effect in St. Francois County, Missouri; if you so find, and if you further find that the cattle with which plaintiff's automobile collided was the property of or in possession of the defendants; if you so find, then you are further instructed that by the provisions known as the Missouri Stock Law is meant that provision of the Missouri Stock Law that required cattle, among other animals, be restrained in an enclosure of the owner or possessor and not permitted to run at large and onto the Highway in question, and that one violating the Missouri Stock Law 'shall also pay all persons damaged by reason of such animals running at large, the actual damage sustained by him or them,' unless you find that said cattle were outside the enclosure through no fault or negligence of the owner or possessor. You are further instructed that you are entitled to infer negligence on the part of the defendants from the fact that the cattle were on the highway at the time of the collision mentioned in evidence, but that such inference is not conclusive. You are further instructed that the burden of proof by the greater weight of the credible evidence is upon the defendants to prove that said cattle were present on the highway without any fault or negligence on the part of the defendants or their agents, and unless you so find your verdict will be in favor of plaintiff and against the defendants."·

Instruction No. 3, given at the request of defendants, is as follows:

"The Court instructs the jury that under the law, the plaintiff is not entitled to recover from the defendants merely because the defendants' livestock escaped from the defendants'· enclosure and got upon a public highway and thereby caused damage to the plaintiff's automobile. If the defendants, by the greater weight of the· credible evidence in the case, prove· that such livestock were present on. the highway without any fault or negligence on the part of the defendants,. then there is no liability placed upon them, but the burden of so proving. rests upon the defendants. The jury are entitled to infer negligence on the part of the defendants from the mere· fact of the escape of the animals and· the subsequent happening of the accident, but any such inference is not conclusive. That is, it must be weighed and balanced by you against any evidence offered by the defendants to show that they, the defendants, were· not guilty of any fault or negligence;. and if, after so weighing and balancing the evidence, you find from the greater weight of the credible evidence· in the case, that the cattle in question· escaped without any fault or negligence on the part of the defendants,. then you must return a verdict for the·

defendants on the plaintiff's cause of action."

This court, in the case of Anderson v. Glascock, Mo.App., 271 S.W.2d 243, made the only pronouncement on the Missouri Stock Law since it was amended in 1939. In that case, the court considered the problem of an instruction which contained some language of the statute in quotation marks, but the opinion does not hold that the setting out of a portion of the statute in an instruction with quotation marks is error. Since in that case plaintiff's verdict-directing instruction omitted a necessary element for recovery, to wit, the owner of cattle permitting them to run at large, said instruction was held to be reversibly erroneous; and it was held such omissions cannot be cured by including the omitted element in other instructions.

However, in Anderson v. Glascock, supra, the court did say that the portion of the statute within the quotation marks is given special emphasis, and, by contrast, the impression is conveyed that the other words are not in the exact language of the statute.

 Instruction No. 1 herein is not deficient in the manner of plaintiff's instruction in the Anderson case, and we are of the opinion said instruction No. 1 properly declares the law. Further, the defendants do not point out, nor do we see, how they were prejudiced by including the penal portion of the statute in quotation marks.

Considering the second attack made on the instruction, that it conflicts with Instruction No. 3 given at the request of the defendants, we find that said instruction is practically identical with the instruction given by the defendant in Anderson v. Glascock, supra, which properly declares the law.

In the Anderson v. Glascock case, supra, this court held that since the appellant's instruction was a correct statement of the law and respondent's verdict-directing instruction incorrectly stated the law, and conflicted with the appellant's instruction and thus vitiated it, said respondent's instruction should not have been given. Further, respondent's instruction being a verdict-directing instruction it must not omit any necessary element, such as the element here of permitting the cattle to run at large. Such omissions cannot be cured by including the omitted element in other instructions. Banta v. Union Pacific R. Co., 362 Mo. 421, 242 S.W.2d 34; Griffith v. Delico Meats Products Co., 347 Mo. 28, 145 S.W. 2d 431; Daggs v. Patsos, Mo.App., 260 S. W.2d 794.

In the Anderson case, supra, the court said that a conflict between respondent's instruction and appellant's instruction was demonstrated, and such conflict was confusing to the jury and therefore constituted prejudicial error.

As we have said previously in this opinion, the plaintiff's instruction properly states the law, and defendants' instruction likewise is legally correct; therefore, there is no conflict and no error.

Defendants' next assignment of error is the trial court's entering of judgment against defendants Furry and Babcock, the position of defendants being that there is a failure of proof to show either ownership or control of the cattle involved in the collision with plaintiff's automobile.

Referring to plaintiff's petition, we find that paragraph 1 alleges that the defendants at the time of the collision owned and operated a sales barn together with stock pens located on the west side and adjacent to Highway No. 67 north of Farmington, Missouri. Paragraph 2 alleges the defendants kept in the sales barn and the stock pens cattle belonging to the defendants and others for the purpose of selling said stock at the auction barn to the public.

Defendants in their answer admit the allegations contained in paragraphs 1 and 2 of plaintiff's petition.

After the jury was sworn, but before the opening statements were made, the defendants admitted in the presence of the jury and the court that the Farmington Auction Barn at that time was owned by Calvin Furry, A. J. Babcock, and E. E. Williams, doing business as Farmington Auction Company.

Defendant E. E. Williams testified that the ownership of the barn was in all defendants, but the cattle involved in the collision belonged to him alone.

Sergeant Maxey testified that defendant Williams, at the scene of the collision, admitted owning the cattle and the fact that the cattle had escaped from *their* corral.

■ In view of the plaintiff's pleadings, the defendants' admissions and evidence, the jury's verdict against all three defendants as well as the court's entry of judgment against all of the defendants was proper. Once the cattle were placed in the barn, which was admittedly the property of all the defendants, the duty arose under the law to keep the cattle from running at large on the highway.

In the case of Mayfield v. Kansas City Southern Ry. Co., Mo.App., 101 S.W.2d 769, the Kansas City Court of Appeals held that the defendant could not complain of the insufficiency of the evidence in respect to facts alleged in answer, since an answer constituted conclusive admission of such facts, regardless of testimony or physical facts.

In the last assignment of error defendants contend the court erred in entering judgment against defendant Williams because there was no evidence to refute his testimony that he locked the gates to the corral when the cattle were put into the pen a few hours before their escape.

■■ Under the evidence in this case plaintiff collided with cattle belonging to defendants, which cattle were loose on the public highway. The defendants' evidence demonstrated that the cattle had been penned up several hours before the collision. This evidence makes a jury question which was resolved in favor of the plaintiff. The defendants had the burden of proof to show that they exercised care in penning the cattle. The oral evidence offered by the defendants may be disbelieved by the jury, and the court could not properly direct a verdict for a party having the burden of proof on an issue where the evidence on that issue is verbal, because that party has the risk of non-persuasion of the jury on such issue. In 140 A.L.R. loc. cit. 750, it is said that "where an accident occurs as the result of a violation of such a statute a presumption of negligence on the part of the owner of the animal arises, which is sufficient to carry the case to the jury."

Instruction No. 3, offered by the defendants, required the jury to consider the defendants' evidence about penning the cattle, and, if the cattle escaped through no fault of the defendants, to return a verdict for the defendants. The verdict demonstrates the jury disbelieved defendants' evidence.

In the case of Lins v. Boeckeler Lumber Company, 221 Mo.App. 181, 299 S.W. 150, this court, in an action for personal injuries in a collision on a public highway in the night time between plaintiff's automobile and defendant's mule, held that the question whether the defendant was negligent in permitting mule to run at large on the highway was for the jury, under the evidence in the case.

Finding no error in the record, the judgment is affirmed.

RUDDY, P. J., and ANDERSON, J., concur.