Steve JONES, Robert Jones, Therese Signaigo, Marycarol Jones, Jennifer Jones, and The Estate of Catherine Jones, Appellants,

v.

ST. CHARLES COUNTY, Respondent.

No. ED 85652.

Missouri Court of Appeals,
Eastern District,
Division One.

Nov. 8, 2005.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 22, 2005.

Application for Transfer Denied
Jan. 31, 2006.

David L. Coffman, St. Louis, MO, for appellant.

Beverly E. Temple, St. Charles, MO, for respondent.

CLIFFORD H. AHRENS, Judge.

Steve Jones, Robert Jones, Therese Signaigo, Marycarol Jones, Jennifer Jones, and Steve Jones as personal representative of the Estate of Catherine Jones (collectively referred to herein as "plaintiffs"), appeal the judgment of the trial court granting summary judgment in favor of St. Charles County ("the county"). Plaintiffs claim the trial court erred in granting summary judgment because genuine issues of material fact exist concerning the county's liability under the Missouri Stock Law and its waiver of sovereign immunity. We affirm in part and reverse and remand in part.

Catherine Jones ("decedent") was driving a vehicle on highway 40 when she struck a horse. Jones died from injuries at the scene of the accident. The horse was owned by Rafter Heart, Inc. ("RHI"), and had been placed in a nearby pasture located on property owned by the county. Pursuant to a concession agreement with the county, RHI operated stables and a riding concession on the property. Plaintiffs filed a wrongful death action against RHI and St. Charles County. In count one of the petition, plaintiffs alleged liability pursuant to the Missouri Stock Law, section 270.010 RSMo (2000)[1]. In count two, plaintiffs alleged general negligence. The county moved to dismiss the action, and alternatively moved for summary judgment. The trial court granted the county's motion for summary judgment, finding that there was no joint venture between the county and RHI, and plaintiffs failed to plead the essential elements to invoke the Missouri Stock Law against the county. The court also found that the county did not waive its sovereign immunity. The court found no just reason for delay existed, finalizing the judgment for purposes of appeal[2]. Plaintiffs now appeal.

We review the trial court's decision to grant summary judgment *de novo*. *Missouri Employers Mut. Ins. Co. v. Nichols*, 149 S.W.3d 617, 622–23 (Mo.App.2004); (citing *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993)). We do not defer to the trial court. *Id.* at 623.

---

1. All further statutory references are to RSMo (2000).

2. An interlocutory order of default was entered in favor of Plaintiffs against RHI on January 13, 2003, but no hearing on damages had taken place at the time of the trial court's judgment in favor of the county.

Whether the decision of the court is proper is purely an issue of law. *Id.* We will uphold the grant of summary judgment on appeal if no genuine dispute of material fact exists, and the movant is entitled to judgment as a matter of law. *Id.* We view the evidence in the light most favorable to the party against whom the judgment was entered, and we afford them the benefit of all reasonable inferences from the evidence. *Id.* The movant's right to judgment differs depending upon whether the movant is a " 'defending party.' " *Id.* A "defending party" may be entitled to summary judgment where it can show facts to negate any element of the plaintiff's claim. *Skay v. St. Louis Parking Co.*, 130 S.W.3d 22, 25 (Mo.App.2004). " 'Where the facts underlying this right to judgment are beyond dispute, summary judgment is proper.' " *Id.; (quoting ITT Commercial*, 854 S.W.2d at 381).

■ In their first point, plaintiffs claim the trial court erred in granting summary judgment in favor of the county on count one because it was a possessor of the horse that escaped and collided with Jones's vehicle. Plaintiffs argue that while the county did not own the horse, it owned the land upon which the horse was kept, and therefore, could be considered a possessor of the horse for purposes of the Missouri Stock Law.

Pursuant to section 270.010, it is unlawful to allow horses to run at large outside an enclosure, and the owner of the animal is responsible for damages sustained by persons as a result of the animal running at large.

As plaintiffs note, our courts have interpreted the Missouri Stock Law as applying to both owners and possessors of animals. *Keefer v. Hartzler*, 351 S.W.2d 479, 480 (Mo.App.1961). The trial court found that it believed plaintiffs failed to plead the essential elements to invoke the Stock

Law. However, plaintiffs did argue the county's possession of the horse in their response to the county's motion for summary judgment. The trial court addressed plaintiffs' argument and determined that the Stock Law did not apply to the county. The court granted summary judgment in favor of the county.

Plaintiffs rely on *King v. Furry*, 317 S.W.2d 690 (Mo.App.1958), to argue that the county, as possessor of the horse, was subject to liability under section 270.010. The trial court distinguished *King*.

In *King*, there was a collision between a vehicle and cattle. The plaintiff brought an action against three defendants under the Missouri Stock Law and for general negligence. The cause was submitted to the jury only on the Stock Law claim, and a verdict was returned in favor of plaintiff against all three defendants. The defendants appealed, arguing that the trial court erred in entering judgment against two of the defendants, because there was no proof of the ownership or control of the cattle by those two defendants. The court of appeals found that in view of the pleadings, the admissions of defendants, and the evidence, the verdict against all three defendants and the court's entry of judgment against them was proper. *Id.* at 696.

The court in the present case placed significant weight upon the fact that in *King*, the defendants admitted they were partners in the operation of the auction barn from which the cattle escaped. The court noted that here, the county and RHI were not partners. We agree that the facts of *King* are distinguishable from the present case.

In *King*, the defendant who owned the cattle involved in the collision testified that he and the remaining two defendants were partners. The defendants admitted that they owned and operated a sales barn

together with stock pens on the property for the purpose of selling the stock at the auction barn to the public. In the present case, plaintiffs alleged that the county owned the property upon which the riding stables and pastures were located. However, there was no evidence of a partnership between the county and RHI to establish the county's possession or ownership of the horses kept on the property. The county did not admit to owning the horses or the riding concession, nor did it admit to being involved in a partnership with RHI.

The evidence in the record before us shows that the county asserted some control over the operation of the riding concession, pursuant to its agreement with RHI. The county could enter the areas used by RHI and inspect the property, and agreed to perform some maintenance and operation services. The county reserved the right to provide marketing and advertising services for the concession, and reserved the right to review the records of the concession. However, this general oversight of the operation did not constitute control such that the county became a "possessor" of the horse subject to liability under the Missouri Stock Law. Instead, it is clear that the horse involved in the collision in the instant case was owned solely by RHI. Based upon the undisputed facts, as a matter of law the county did not own or possess the horse involved in the collision. Point denied.

■ In their second point on appeal, Plaintiffs claim the trial court improperly granted summary judgment in favor of the County on count one because the record established a disputed issue of material fact as to whether the County was engaged in a joint venture with RHI to operate the stables, and thus owned the horse as a joint venturer.

■ "A joint venture is essentially 'an association of two or more persons to car-ry out a single business enterprise for profit.'" *Ritter v. BJC Barnes Jewish Christian Health Systems*, 987 S.W.2d 377, 387 (Mo.App.1999); *(quoting Eads v. Kinstler Agency, Inc.*, 929 S.W.2d 289, 292 (Mo.App.1996)). The elements of a joint venture are: (1) an express or implied agreement among the members; (2) a common purpose; (3) a community of pecuniary interest; and (4) equality in determining the direction of the enterprise. *Id.* "Indications of a joint venture include: actively participating and sharing in the profits, all parties having joint and several control, and having a duty to share the losses." *Id.*

If a movant for summary judgment is a defendant, as the county is in the present case, summary judgment will be proper where the defendant shows undisputed facts that negate any one of the required elements of the cause of action. *Williams v. Missouri Highway and Transp. Com'n*, 16 S.W.3d 605, 610 (Mo.App.2000).

In the present case, the trial court premised its judgment upon the grounds that pursuant to the concessionaire agreement, the county was only to share in a percentage of the gross receipts. The trial court found that this did not call for the county to share in any profits or losses, only gross receipts, and therefore, as a matter of law, a joint venture did not exist.

■ The concession agreement entered into between the county and RHI provided that the county would receive nine percent of the gross receipts each month. According to the agreement, this amount included anything of value received by RHI in its operation of the business on the premises. The record does not support a finding of a community of pecuniary interest simply because both parties share an economic interest in the operation of the concession. *Hatch v. V.P. Fair Foundation, Inc.*, 990 S.W.2d 126, 138 (Mo.App.1999). "The

community of pecuniary interest requires that the parties have a right to share in the profits and a duty to share in the losses." *Id.* (citations omitted). Here, the county was to obtain a percentage of anything of value received by RHI in its operation of the concession, regardless of whether or not RHI made a profit. Additionally, the county had no duty to share in any of RHI's losses. Therefore, as a matter of law, no common pecuniary interest existed, and summary judgment in favor of the county as to its liability as a joint venturer with RHI was proper.

Moreover, as we noted in our analysis of point one, the county did not assert sufficient control over the operation to establish a genuine issue of material fact as to the joint and several control required for a joint venture. Much of the operation and maintenance of the concession was left to the control of RHI. While the county did retain some control over the property and the operation of the riding concession, it did not rise to the level of joint and several control. Point denied.

As a result of the foregoing, the trial court did not err in granting summary judgment in favor of the county on count one.

In their final point, Plaintiffs argue the trial court erred in granting summary judgment in favor of the county on the negligence claim in count two of their petition because they pleaded and proved sufficient summary judgment facts to show that the dangerous condition of the fencing resulted in a waiver of sovereign immunity.

The trial court found that although plaintiffs pled that the fences lacked sufficient strength to contain the horses on the property, they failed to allege that this condition caused the injuries, or created a reasonably foreseeable risk of harm of the injuries which decedent sustained. According to the trial court, plaintiffs also failed to allege what actual or constructive notice the county had in time to take preventative or curative actions.

"Missouri is a 'fact pleading' state ..." *State ex rel. United Industries Corporation v. Mummert,* 878 S.W.2d 494, 496 (Mo.App.1994); (citing *ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp.,* 854 S.W.2d 371, 379 (Mo. banc 1993)). This requires that a petition contain a short and plain statement of facts to show the pleader is entitled to relief. *Id.;* (citing Section 509.050.1(1) RSMo.Supp.1993; Rule 55.05, *Commercial Bank of St. Louis County v. James,* 658 S.W.2d 17, 21 (Mo. banc 1983); *Berkowski v. St. Louis County,* 854 S.W.2d 819, 823 (Mo.App.1993)). A petition will be deemed insufficient only where it completely fails to state a cause of action by failing to allege facts essential to recovery. *Id.* (citation omitted).

The plaintiffs in the present case alleged that horses used in the riding concession operated by the county left the property and entered the highway. The horse was struck by decedent's vehicle, and pinned her to the seat. Plaintiffs alleged decedent died from her injuries at the scene of the incident. Plaintiffs set forth several allegations as to the negligence of the county in its construction and/or maintenance of fencing. The plaintiffs alleged that as a direct and proximate cause of the negligence of the county and RHI, they sustained damages. These allegations were sufficient to state a cause of action of general negligence against the county.

In their response to the county's motion for summary judgment and their suggestions in opposition, plaintiffs specifically set forth summary judgment facts to support their claim that the county waived sovereign immunity pursuant to section 537.600. Generally, governmental entities are immune from tort liability and

suits for compensatory damages for negligent acts or omissions. *Martin v. Missouri Highway and Transp. Dept.,* 981 S.W.2d 577, 579 (Mo.App.1998); (citing section 537.600; and *Williams v. City of Independence,* 931 S.W.2d 894, 895 (Mo. App.1996)). However, pursuant to section 537.600, sovereign immunity is expressly waived for injuries resulting from a dangerous condition on the property of the governmental entity[3]. To state a claim under the dangerous condition exception, a plaintiff must prove that there was a dangerous condition on the property, plaintiff's injuries were a direct result of the dangerous condition, the condition created a reasonably foreseeable risk of harm of the type incurred by plaintiff, and a public employee negligently created the condition or the public entity had actual or constructive notice of the dangerous condition. *Martin,* 981 S.W.2d at 579–80; (citing *Alexander v. State,* 756 S.W.2d 539, 541 (Mo. banc 1988)). "Whether a defendant created a sufficiently dangerous condition is ordinarily a question of fact." *Id.* at 582.

 The trial court found that count two of plaintiffs' petition failed because sovereign immunity had not been waived by the county. In its judgment, the trial court relied on *State ex rel. Div. of Motor Carrier & R.R. Safety v. Russell,* 91 S.W.3d 612 (Mo. banc 2002), and *Sisk v. Union Pacific R.R. Co., et al.,* 138 S.W.3d 799 (Mo.App.2004); however, these cases are distinguishable.

In both *Russell* and *Sisk,* the courts determined that the sovereign did not own or control the property upon which the dangerous condition existed, and therefore, was immune from liability and did not waive the immunity. In the present case, it is undisputed that the alleged dangerous condition did exist on property owned by the county. Thus, the court's reliance upon cases in which it was determined that the sovereign did not own or control the property upon which the dangerous condition existed is misplaced.

Where the movant for summary judgment is a defendant, as the county is in this case, summary judgment will be proper where the defendant shows the undisputed facts that negate any one element of a cause of action. *Williams v. Missouri Highway and Transp. Com'n,* 16 S.W.3d 605, 610 (Mo.App.2000).

Here, there were summary judgment facts to support a genuine issue of material fact as to the first three elements of the dangerous condition exception to sovereign immunity. There was evidence that the wood on the fence from which the horse escaped was rotting. Deputy Patrick Riley, of the St. Charles County Sheriff's Department, investigated the accident. He testified that the wood in the broken portion of the fence was rotted. In his narrative report of the investigation, Deputy Riley stated that the "upper portion of the fence was obviously older wood that had rotted to the point of breaking." Nick Donze, the assistant director of the parks department for St. Charles County, also testified that the top rail of the fence appeared to be rotten. The portion of the fence in question was broken, and evidence supported the belief that this is where the horse involved in the collision escaped. The horse collided with decedent's car, and she died from the resultant injuries. Given the evidence regarding the proximity of the property to the highway, it was a reasonably foreseeable risk of harm that a horse roaming at large could cause a serious, if not fatal collision.

 With respect to the final element of the dangerous condition exception, there is no evidence that any employee of the

---

**3.** The liability of the sovereign resulting from the waiver of sovereign immunity under section 537.600 is limited pursuant to the provisions in section 537.610.

county created the condition, nor is there evidence that the county had actual notice of the condition of the fence. The issue then becomes whether the undisputed summary judgment facts establish as a matter of law that the county did not have actual or constructive notice of the condition. A sovereign has constructive knowledge of a dangerous condition if it is of such a nature that, while not obvious or notorious, it has existed long enough that the sovereign, in the exercise of ordinary care, should have and could have discovered it and remedied it. *Lockwood v. Jackson County, Mo.,* 951 S.W.2d 354, 357 (Mo. App.1997); (citing *Feely v. City of St. Louis,* 898 S.W.2d 708, 709 (Mo.App. 1995)).

In the present case, the county, pursuant to its agreement with RHI, did retain some control over the operation of the riding concession. The county could enter the areas used by RHI and inspect the property. Curt Loupe, the director of the parks department for St. Charles County, testified that he visited the property prior to the county's acquisition to evaluate it as a potential parks site. He was aware that horses were kept on the property, and he was aware that fencing existed on the property. Loupe also had prior experience with the containment of animals. During his tenure as parks director for the City of Topeka, Kansas, Loupe maintained a herd of ponies on Topeka park grounds. In his deposition, Loupe testified that ensuring the integrity of the fencing was necessary to keep the ponies from escaping. He stated that if a pony was loose, it could present a safety hazard. Nick Donze, the assistant director of the parks department, also visited the property. John Watts, the owner of RHI, testified that Curt Loupe walked the property and took pictures of the horse pastures.

As previously noted, the report of Deputy Riley stated that the portion of the fence through which the horse escaped was "obviously older wood" that had rotted. A fact-finder could reasonably infer from this evidence that the condition had been present for a length of time such that the county, in its inspection of the property, had constructive notice of the condition of the fence.

As a result of the foregoing, we believe there was sufficient evidence to create a genuine issue of material fact as to the county's constructive knowledge of the dangerous condition. Therefore, the trial court erred in granting summary judgment in favor of the county with respect to count two of plaintiffs' petition.

The judgment of the trial court is affirmed as to count one and reversed and remanded as to count two for further proceedings consistent with this opinion.

MARY K. HOFF, P.J., and PATRICIA L. COHEN, J., concur.