**John J. NOONEY, Appellant,**

v.

**NATIONSBANK, N.A., Respondent.**

No. 75202.

Missouri Court of Appeals, Eastern District, Division Four.

July 27, 1999.

Herzog, Crebs & McGhee, LLP, Peter W. Herzog, Michael A. Vitale, Jennifer J. Herner, St. Louis, for appellant.

Lewis, Rice & Fingersh, L.C., Joseph J. Trad, Robert J. Will, St. Louis, for respondent.

Before HOFF, P.J., GARY M. GAERTNER, J., and RHODES RUSSELL, J.

PER CURIAM.

John J. Nooney ("appellant"), appeals the judgment of the Circuit Court of St. Louis County dismissing his claims against respondent, NationsBank, N.A. ("Bank"), for aiding and abetting breach of fiduciary duty and commission of acts of oppression, declaratory judgment, conspiracy to defraud, conspiracy to transfer in fraud of creditors, and tortious interference with creditors' rights.[1] We dismiss the appeal without prejudice.

This appeal arises out of a long and complex factual and procedural history. A general overview, based on the allegations contained in appellant's second amended petition, follows: appellant is a former officer and director of defendant Nooney Company ("Nooney Company"). In general, Nooney Company and its various related affiliate companies are engaged in the real estate industry.

Appellant states that at all relevant times herein, the officers and directors of Nooney Company were Greg Nooney, Patricia A. Nooney–Byrne ("Patricia Nooney") and Patrick A. Byrne ("Patrick Byrne"). Greg Nooney, also a defendant in this case, but not a party to this appeal, is appellant's brother. At all times relevant to this lawsuit, Greg Nooney was an officer and director of Nooney Company and Nooney Krombach and by virtue of appellant's irrevocable proxy to him,[2] was the controlling shareholder of Nooney Company. Patricia Nooney, also a defendant in this case, but not a party to this appeal, is Greg Nooney's daughter. At all times relevant to this lawsuit, Patricia Nooney was an officer and director of Nooney Company and defendants NK Development Company, L.L.C. ("NK Development") and Nooney Krombach. Patrick Byrne, also a defendant in this case, but not a party to this appeal, is the husband of Patricia Nooney and son-in-law of Greg Nooney. At all times relevant to this lawsuit, Patrick Byrne was an officer and director of Nooney Company and defendants NK Development and Nooney Krombach.

Defendant Bank is a national banking association with offices located in the St. Louis metropolitan area. According to appellant's second amended petition, Bank and its predecessor, Boatmen's Bancshares, Inc. ("Boatmen's"),[3] or affiliates thereof, have transacted business from which this cause of action arises and committed the torts alleged therein.[4]

Appellant alleges in his second amended petition that on approximately May 17, 1992, he and Greg Nooney, Nooney Company and Nooney Krombach, as well as other parties, entered into an agreement ("May 1992 Agreement"), whereby, inter

1. The trial court minutes indicate the defendants named in appellant's pleadings are: 1) Nooney Company, 2) Nooney Krombach Company, 3) CGS Real Estate Company, Inc. (apparently dismissed without prejudice), 4) Gregory J. Nooney, Jr., 5) Patricia A. Nooney–Byrne, 6) Patrick A. Byrne, 7) NK Development Company LLC, 8) Nooney Real Estate Company, 9) NationsBank, and 10) PAN, Inc. (collectively referred to as the "Nooney defendants").

2. Appellant had executed an Irrevocable Proxy in favor of Greg Nooney with regard to the voting rights appurtenant to appellant's fifty percent of Nooney Company stock. Greg Nooney owned the remaining fifty percent of Nooney Company stock. In his second amended petition, appellant alleges Greg Nooney, at all relevant times therein, controlled the voting rights of all Nooney Company stock by virtue of said Irrevocable Proxy and his ownership of the other fifty percent of Nooney Company stock.

3. Appellant alleges in his second amended petition that "[o]n or after August 30, 1996, NationsBank acquired Boatmen's and succeeded to Boatmen's rights, interests, liabilities and obligations. Upon information and belief, on or after April 13, 1998, NationsBank merged or will merge with BankAmerica Corp."

4. All references herein to Bank refers to NationsBank or Boatmen's, as the collectively merged entity, as well as the predecessor entities.

alia, appellant resigned as an officer and director of Nooney Company and its subsidiaries, thus leaving Greg Nooney in control of said corporations. Pursuant to this agreement, Greg Nooney, Nooney Company and its subsidiaries agreed to certain obligations intended to benefit appellant as the fifty percent shareholder of Nooney Company. Subsequently, on approximately December 31, 1992, a series of agreements to augment and, in some cases, modify the terms of the May 1992 Agreement were executed ("December 1992 Agreements").

On December 1, 1992, an agreement was executed by Greg Nooney and his family, appellant and his family, Nooney Company, subsidiary, affiliated and related companies and partnerships of Nooney Company ("Nooney Company affiliates") and Bank to restructure the debt of Nooney Company and the Nooney Company affiliates ("1992 Master Modification Agreement").

According to appellant's second amended petition, after the 1992 Agreements were solidified, Greg Nooney, as controlling shareholder or together with his fellow officers and directors, wrongfully caused Nooney Company to forgive hundreds of thousands of dollars of Greg Nooney's own personal debt to it. Appellant asserts Bank became aware of said debt forgiveness and had a right to call a default and request reinstatement of the debt under the 1992 Master Modification Agreement, but Bank did nothing.

On April 24, 1996, after a jury trial, appellant was awarded a $685,000.00 judgment against Nooney Company for an indemnification matter. Said judgment has been affirmed by this court,[5] but allegedly remains unpaid. On May 1, 1996, Nancy Nooney and Deborah N. Speier, appellant's daughters, were awarded a judgment against Greg Nooney. This judgment has also been affirmed by this court,[6] but also allegedly remains unpaid.

Appellant further alleges shortly after the aforementioned judgments were entered, between May 1, 1996 and May 6, 1996, Greg Nooney defaulted on a personal loan to Bank, despite resources available to him. On approximately May 9, 1996, Greg Nooney met with Bank regarding his default and the entry of the aforementioned judgments. At that meeting, appellant alleges Bank requested the unliened assets of Greg Nooney, the Nooney Company and the Nooney Company affiliates. Allegedly, this was to prevent a "change in control" of Nooney Company and the Nooney Company affiliates arising from the aforementioned judgments. Appellant alleges a proposal to offer him a reduced amount of his judgment was discussed at this meeting, but said offer was never made.

Appellant further alleges that on July 9, 1996, Bank called a default on an October 1995 transfer by Greg Nooney to his wife, of a note receivable from Nooney Company. Bank allegedly never asked Greg Nooney to recover said note, rather it asked for and collected additional unliened assets from Greg Nooney and Nooney Company. On July 15, 1996, Nooney Krombach allegedly missed a payment on its $2,500,000.00 note to Bank, despite resources purportedly available to it.

Appellant alleges that as garnishments on the aforementioned judgments were filed and served on Nooney Company and Nooney Company affiliates, Greg Nooney delivered these garnishments to Bank. Moreover, appellant alleges that under the guise of the aforementioned "orchestrated defaults", Bank "collected the garnished assets from [Greg Nooney], Nooney Company and Nooney Company affiliates with the purpose of avoiding those garnishments." According to appellant, Bank readvanced funds to Greg Nooney at least once, who then deposited them in his wife's account, thus avoiding the garnishments.

5. *Nooney v. Nooney Co.*, 948 S.W.2d 725 (Mo. App. E.D.1997).

6. *Nooney v. Nooney,* 959 S.W.2d 945 (Mo. App. E.D.1998).

Also, as explained in the second amended petition, in or after March 1997, Greg Nooney transferred a portion of his interest in each of the publicly held Nooney Company-affiliated partnerships to his daughter's company, PAN, Inc. According to appellant, while Bank became aware of this transfer and had a right to call a default and demand cancellation of said transfer pursuant to the 1992 Master Modification Agreement, it did nothing.

Appellant alleges on approximately August 25, 1997, Greg Nooney allegedly initiated and approved indemnification by Nooney Company of his personal indebtedness in excess of $1,500,000.00. Subsequently, purportedly with Bank's knowledge and approval, CGS Real Estate Company, Inc. ("CGS"), as part of its asset purchase (described *infra*), assumed Greg Nooney's personal aforementioned indebtedness.

Appellant further states that on approximately August 28, 1997, Nooney Real Estate and Nooney Krombach executed a Master Agreement, under which Nooney Real Estate was to acquire all of the assets of Nooney Krombach ("1997 Master Agreement"). Generally, pursuant to the 1997 Master Agreement, *inter alia*, Nooney Real Estate and/or CGS were to acquire substantially all of the assets of various Nooney Company affiliates, including some management agreements, as well as various general and limited partnership interests owned by Nooney Company and its subsidiaries. Also under the 1997 Master Agreement, CGS was to assume personal indebtedness of Greg Nooney in exchange for his general partner interests in certain Nooney-affiliated partnerships and Greg Nooney was to have his assumed indebtedness on various other obligations released. Additionally, Greg Nooney, Patricia Nooney and Patrick Byrne were to enter into five-year employment contracts with Nooney Real Estate. Also, Greg Nooney was to be named a member of the Board of Directors of CGS and Chairman of the Board of Directors of Nooney Real Estate, and Patricia Nooney was to be named President of Nooney Real Estate.

Appellant further alleges as part of the transaction between Nooney Krombach, Nooney Real Estate and CGS, Bank agreed to release at least some of the collateral that was formerly pledged to secure Nooney Company's indebtedness to Bank. According to appellant, Bank also agreed to release Greg Nooney from some of his guarantees. Appellant asserts in his second amended petition that "[Bank] has admitted that the CGS transaction could not have gone forward without its substantial participation and consent. . . . In fact, [Bank] was involved in every step of the negotiation process."

On approximately October 28, 1997, appellant filed an action for a temporary restraining order to enjoin the closing of the transactions agreed to in the 1997 Master Agreement. Bank, not yet a named party, attended the hearing to oppose the temporary restraining order. The temporary restraining order was not granted; but the court ordered that all excess cash proceeds from the CGS transactions be delivered into escrow. According to appellant, no such proceeds were ever delivered. On approximately November 6, 1997, the transactions agreed to in the 1997 Master Agreement closed.

According to appellant's second amended petition, with the transfer of almost all of the assets of certain of the Nooney Company affiliates in accordance with the 1997 Master Agreement, both Nooney Company and some of its subsidiaries have become "worthless shells." Appellant asserts, "Greg Nooney . . . admitted that the goal of the CGS transaction was to leave Nooney Company a worthless shell, holding all the debt, including debt to appellant." Furthermore, the transfer of almost all of the assets of these certain Nooney Company affiliates has "rendered [appellant's] stock in Nooney Company worthless."

In or about January 1998, appellant filed, in the action, a first amended petition, containing eleven counts, for breach of fiduciary duty, oppression, aiding and

abetting, and declaratory judgment. It was in this pleading that appellant first named Bank as a defendant in this lawsuit.

On March 6, 1998, Bank filed a motion to dismiss the first amended petition. The circuit court, after briefing and oral argument, entered its order staying Bank's motion to dismiss for sixty days, in order to allow appellant to conduct limited discovery on certain issues and granting him leave to amend his claims against Bank.

After conducting written discovery and taking several depositions, appellant filed his second amended petition on June 26, 1998. On July 1, 1998, Bank filed a motion to dismiss appellant's second amended petition for failure to state a claim upon which relief can be granted.

The circuit court granted Bank's motion to dismiss appellant's second amended petition on August 24, 1998, thereby dismissing with prejudice all claims against Bank brought in the second amended petition. All claims against the other co-defendants still remain pending in the circuit court. On September 2, 1998, appellant filed his motion for reconsideration of the August 24, 1998 judgment and order, or alternatively, to certify the judgment for appeal. On October 13, 1998, the circuit court denied appellant's motion to reconsider. However, the circuit court granted his request for certification, finding "that there is no just reason for delay" and certifying the August 24, 1998 judgment was a "final" judgment in accordance with Rule 74.01(b),[7] and therefore, subject to immediate appeal. Appellant filed his notice of appeal on October 22, 1998.

Appellant raises five points on appeal, all of which essentially mirror his five claims against Bank in his second amended petition. On November 12, 1998, Bank filed, with this court, a motion to dismiss appeal for lack of subject matter jurisdiction, wherein Bank essentially argues the circuit court erroneously certified the August 24, 1998 judgment as "final" under Rule 74.01(b). We agree with Bank and grant its motion to dismiss appeal for lack of subject matter jurisdiction.

■ In every case, the Court of Appeals is charged with an affirmative duty to examine the propriety of its jurisdiction. *Hertlein v. Highway & Transp. Com'n*, 820 S.W.2d 109, 110 (Mo.App.E.D.1991); *see also, Committee for Educ. Equality*, 878 S.W.2d at 450; *Jackson v. Christian Salveson Holdings*, 914 S.W.2d 878, 881 (Mo.App. E.D.1996).

■ A trial court is granted broad latitude in deciding whether to certify a partial judgment for appeal pursuant to Rule 74.01(b). *Lynch v. Lynch*, 966 S.W.2d 345, 347 (Mo.App. E.D.1998). "However, where the circumstances of the case and the judgment entered are wholly inconsistent with a finding of 'no just cause for delay,' a finding to that effect by a trial court is an abuse of discretion." *Committee for Educ. Equality v. State*, 878 S.W.2d 446, 453 (Mo.banc 1994).

■ While the "right of appeal is statutory[,][a]ppeal is appropriate only from a final judgment." *Schott v. Beussink*, 913 S.W.2d 106, 107 (Mo.App. E.D.1995)(citing RSMo section 512.020 (1994)). "A judgment disposing of all claims or the rights and liabilities of all parties is a prerequisite to appellate review." *Lynch*, 966 S.W.2d at 346 (citing Rule 74.01). "This prerequisite reflects the fundamental prohibition against piecemeal appeals." *Lynch*, 966 S.W.2d at 346. "However, Rule 74.01(b) contains an exception to this rule wherein it allows a trial court to enter judgment on fewer than all claims or with respect to fewer than all parties and certify the judgment appealable by finding 'there is no just reason for delay.' " *Id.* at 346–47.

■ When determining whether the certification of a judgment under Rule 74.01(b) is proper, courts apply the follow-

---

7. All rule references are to the Missouri Rules of Civil Procedure (1999), unless otherwise noted.

ing four-factor test: "(1) whether the action remains pending in the trial court as to all parties;' (2) whether similar relief can be awarded in each separate count; (3) whether determination of the claims pending in the trial court would moot the claim being appealed; and (4) whether the factual underpinnings of all the claims are intertwined." *Lynch,* 966 S.W.2d at ·347. After considering the facts of the case at bar with regard to these factors, we find the trial court abused its discretion in finding "no just reason for delay."

In its motion to dismiss appeal, Bank concedes the trial court's August 24, 1998 judgment disposes entirely of appellant's claims against Bank, but contends that this fact by itself is not dispositive of the issue. We agree.[8] With regard to the fourth factor listed above, appellant's counts for aiding and abetting breach of fiduciary duty and commission of acts of oppression, for declaratory judgment against Bank, for conspiracy to defraud, and for conspiracy to transfer in fraud of creditors all derive factually from the breach of fiduciary duty claims, fraud claim, and transfer in fraud of creditors claim that remain pending against the Nooney defendants. In other words, as demonstrated by the complex factual history set forth above, the factual underpinnings of these claims against Bank, dismissed by the trial court, are "inextricably intertwined" with those of the claims still pending in the trial court against the other Nooney defendants. *See Saganis–Noonan v. Koenig,* 857 S.W.2d 499, 501 (Mo.App. E.D.1993). "A similarity of factual issues weighs against certifying dismissed claims for appeal." *Id.*

Moreover, with regard to the third factor listed above, because appellant only

alleges that Bank "aided and abetted" or "conspired" with other Nooney defendants in committing these tortious acts against appellant, if the trial court finds that the conduct of the Nooney defendants is not wrongful or tortious (on the claims still pending before it), Bank may necessarily be exonerated as well. Therefore, the trial court's determination of the pending claims could well render moot the claims dismissed by the August 24, 1998 judgment.

Additionally, appellant's count for tortious interference with creditors' rights is based on allegations that Bank and other Nooney defendants interfered with the execution of the judgment obtained by appellant. This same judgment forms the basis of appellant's counts for fraud and for transfer in fraud of creditors, which are still pending against other Nooney defendants. We believe the factual underpinnings of all these claims are also "inextricably intertwined," such that the trial court abused its discretion in certifying this claim final for purposes of appeal.

Appellant argues that our granting Bank's motion to dismiss appeal for lack of subject matter jurisdiction may cause the parties to face the need for a second trial, with much of the same evidence and testimony as the first trial. With respect to this argument, we are guided by *Koenig,* wherein the trial court borrowed the language of *Spiegel v. Trustees of Tufts College,* 843 .F.2d 38, 46 (1ˢᵗ Cir.1988)[9] in admonishing trial courts about routinely entering Rule 74.01(b) certification:

> To entertain an early appeal just because reversal of a ruling made by the district court *might* transpire and *might*

---

8. Our research has turned up no authority indicating that a certain number of these factors must be applicable to find the trial court did or did not err in certifying a partial judgment for appeal pursuant to Rule 74.01(b). However, we do note that such certification has been reversed with this court relying on as few as two of the four factors set forth above. *See, e.g., Saganis–Noonan v. Koenig,* 857 S.W.2d 499, 501–02 (Mo.App. E.D.1993)

(holding that trial court abused its discretion in certifying case for appeal pursuant to Rule 74.01(b), based primarily on the first and fourth factors.)

9. "Federal Rule of Civil Procedure 54(b) is virtually identical to Rule 74.01(b). Federal decisions interpreting Rule 54(b) are persuasive to our decisions regarding Rule 74.01(b)." *Koenig,* 857 S.W.2d at 500.

expedite a particular appellant's case would defoliate Rule 54(b)'s protective copse. This would leave the way clear for the four horsemen of too easily available piecemeal appellate review: congestion, duplication, delay, and added expenses. The path, we think, should not be so unobstructed.

*Koenig,* 857 S.W.2d at 502.

Thus, appellant's argument here is without merit.

We conclude, therefore, that the circuit court abused its discretion in certifying its August 24, 1998 judgment as final under Rule 74.01(b). Because said judgment is not final, this court lacks jurisdiction to hear appellant's appeal. Therefore, we dismiss the appeal without prejudice.