**Robert D. HEROD, et. al., Appellants,**

v.

**Darrell HINDMAN, et. al., Respondents.**

**No. ED 80855.**

Missouri Court of Appeals,
Eastern District,
Division Five.

Feb. 4, 2003.

Paul F. Devine, Jeffrey R. Wolfe, Maryland Heights, MO, for appellant.

Ronald D. Robinson, Mark F. Mueller, St. Louis, MO, for JCTB Services, Inc.

Mark A. Gonnerman, St. Louis, MO, for Darrell Hindman.

LAWRENCE G. CRAHAN, Judge.

Robert and Paula Herod ("Buyers") appeal the summary judgment entered in favor of all but one of the parties from whom they sought to recover damages on account of a faulty and inadequate septic tank system in a home they purchased.

We dismiss the appeal for lack of a final judgment.

The property in question is a single-family home situated on three lots in Bridgeton, Missouri. The property had been purchased by Branman Corporation ("Seller") directly from an estate after it had remained vacant and unoccupied for several months. Seller listed the property for sale with Century 21 Clifford Hindman Real Estate Company ("Seller's Agent"). Buyers submitted a residential sale contract for the home with the assistance of their agent, Landmark & Associates, Inc. ("Buyers' Agent"). Buyers received a disclosure statement in which the Seller stated it had no knowledge of the condition of the property and that it was being sold "as is." However, a "Special Agreements" section of the sale contract required "Seller to provide a soil perculator [sic] test to insure that septic tank is in proper working order."

Upon acceptance of the contract, Darrell Hindman ("Hindman"), Seller's president, called Buyers' Agent to inquire whether Buyers wanted a soil percolator test or a full septic test. A full septic test is more comprehensive and expensive, but appropriate where a septic tank was already in existence. Buyers and Buyers' Agent requested a full septic test and Seller agreed to provide the inspection at its cost.

Seller contracted with JCTB Services, Inc. ("Inspector"), a licensed and certified septic tank inspector, to perform an on-site septic tank inspection. Inspector conducted an on-site inspection of the septic system and provided a written report of its findings to Seller. The report contained a pre-printed checklist in which the following statements were checked "NO":

3.  There is a cleanout between the house and the sewage tank.

4.  Sewage tank is equipped with inspection risers to surface over the baffles or T's.

5.  Baffles or T's are in sound condition, not broken or decomposed.

6.  Baffles and T's do not allow scum or sludge to exit the tank.

7.  Sludge depth is appropriate for tank size.

13.  Sewage tank is properly sized.

17.  Stress/Dye Test is attached.

Handwritten notations on the checklist stated the actual sludge depth was 12 inches and the actual tank size was 415 gallons. A handwritten notation next to line 17 stated, "Home has been unoccupied for approximately 1 year. If a home is unoccupied for 60 days or more, no stress test can be performed."

A separate "Comments" section of the inspection report set forth the following:

1.  There is no cleanout between the tank and house.

2.  There are no inspection risers to surface over the inlet or outlet.

3.  No outlet baffle or tee is present.

4.  As the liquid level of this tank is only 2 feet, the 12 inches of sludge indicate a need to have the tank pumped.

Hindman faxed a copy of Inspector's report to Buyers' agent, who faxed it to Buyers. Thereafter, Seller hired Sutter Plumbing to repair the problems noted in the "Comments" section of the report. Sutter Plumbing provided Seller with a letter stating it had cleaned the septic tank and corrected the noted problems, stating, "All work performed was per the Inspector's letter." Seller furnished a copy of this letter to Buyers' Agent, who forwarded it to Buyers.

Within six months after closing on the property, Buyers began to experience

problems with the septic and plumbing systems. Buyers discovered that not all of their plumbing lines were connected to the septic system. Specifically, the appliances and fixtures at the rear of the home, the dishwasher, washing machine and kitchen and basement sinks simply discharged onto open ground at the rear of the property. Also, the septic tank was too small and allowed discharge directly into the ground instead of processing waste through the septic lines and leach bed.

Buyers sought suit against Seller, Hindman, Seller's Agent, Inspector and Buyers' Agent alleging, *inter alia,* fraud, misrepresentation, breach of contract and breach of fiduciary duty. After conducting discovery, Seller, Hindman, Seller's Agent and Inspector filed motions for summary judgment. Finding no just reason for delay, the trial court granted summary judgment in favor of Seller, Hindman, Seller's Agent and Inspector. Although their claims against Buyers' Agent remain pending in the trial court, Buyers appeal the entry of summary judgment in favor of the remaining parties.

■ Inspector has filed a motion to dismiss the appeal for lack of subject matter jurisdiction. Inspector argues the trial court erroneously certified its judgment as "final" pursuant to Rule 74.05(b). We are charged with the affirmative duty of examining the propriety of our jurisdiction in every case. *Nooney v. Nationsbank, N.A.,* 996 S.W.2d 783, 787 (Mo.App.1999). While the right of appeal is statutory, appeal is appropriate only from a final judgment. *Schott v. Beussink,* 913 S.W.2d 106, 107 (Mo.App.1995). A judgment disposing of all claims or the rights and liabilities of all parties is a prerequisite to appellate review. *Lynch v. Lynch,* 966 S.W.2d 345, 346 (Mo.App.1998). This prerequisite reflects the fundamental prohibition against piecemeal appeals. *Id.* Rule 74.01 contains

an exception to this rule wherein it allows a trial court to enter judgment on fewer than all claims or with respect to fewer than all parties and certify the judgment appealable by finding "there is no just reason for delay." *Id.* at 346–47. However, where the circumstances of the case and the judgment entered are wholly inconsistent with a finding of "no just reason for delay," a finding to that effect by a trial court is an abuse of discretion. *Committee For Educ. Equality v. State,* 878 S.W.2d 446, 453 (Mo. banc 1994).

■ To determine whether the certification of a judgment under Rule 74.01(b) is proper, courts apply the following four-factor test: (1) whether the action remains pending in the trial court as to all parties; (2) whether similar relief can be awarded in each separate count; (3) whether determination of the claims pending in the trial court would moot the claim being appealed; and (4) whether the factual underpinnings of all the claims are intertwined. *Nooney,* 996 S.W.2d at 787–88 (citing *Lynch,* 966 S.W.2d at 347).

■ The judgment that is the subject of this appeal does dispose entirely of all claims against Seller, Hindman, Seller's Agent and Inspector. The only remaining claims are against Buyers' Agent. However, this fact alone is not dispositive. *Nooney,* 996 S.W.2d at 788. Each of the claims asserted against any of the parties would yield the same measure of damages—i.e., the difference in the fair market value of the property in its present state and its fair market value with a properly functioning septic system, or the cost of repair, whichever is less. *See Smith v. Woodard,* 15 S.W.3d 768, 773 (Mo.App. 2000). Moreover, regardless of the number of claims asserted, Buyers are only entitled to one recovery. Thus, if Buyers should prevail on their remaining claims against Buyers' Agent, this would effec-

tively moot their claims against the remaining parties. The factual underpinnings of all of the claims asserted are based on a single transaction and thus are plainly intertwined. Accordingly, we find that the trial court abused its discretion in certifying that the judgment was final for purposes of appeal. Inspector's motion to dismiss is therefore sustained.

Buyers' appeal is dismissed without prejudice.

LAWRENCE E. MOONEY, C.J., and CHARLES B. BLACKMAR, Sr. J., Concur.