Jennifer SISK, Appellant,

v.

**UNION PACIFIC RAILROAD
COMPANY, et al.,**
Defendant,

Jackson County, Missouri, Respondent.

No. WD 62441.

Missouri Court of Appeals,
Western District.

July 20, 2004.

Michael S. Dodig, Lee's Summit, MO, for appellant.

Kathleen Kedigh, Kansas City, MO, for respondent.

Gregory F. Maher, Overland Park, KS, for defendant.

Before BRECKENRIDGE, P.J., EDWIN H. SMITH and HOWARD, JJ.

PATRICIA BRECKENRIDGE, Presiding Judge.

Jennifer Sisk was injured when she was struck by a train while walking down railroad tracks on a railroad bridge. The railroad tracks and bridge where she was injured are on land owned by Union Pacific Railroad Company and, at that point, the railroad line runs through Little Blue Trace Park, which is owned by Jackson County. Ms. Sisk filed suit against both Union Pacific and Jackson County for her injuries. Jackson County subsequently moved for summary judgment based on sovereign immunity. The trial court granted Jackson County's motion, finding neither condition of waiver under section 537.600.1, RSMo 2000,[1] applicable, so her claim was barred by sovereign immunity. The trial court also determined that the judgment as to Jackson County was final for purposes of appeal and that there was no just reason for delay. Ms. Sisk appeals, claiming that the trial court erred in granting summary judgment to Jackson County on the basis of sovereign immunity because the "dangerous condition of property" exception in section 537.600.1(2) is applicable to her claims. Because Ms. Sisk's response to the motion for summary judgment failed to reference evidence that would demonstrate a dangerous condition on Jackson County's property, sovereign immunity bars her claims against Jackson County. Therefore, the judgment of the trial court granting Jackson County's motion for summary judgment is affirmed.

### Factual and Procedural Background

On February 6, 2001, while Ms. Sisk was walking along railroad tracks on a railroad bridge, she was struck by a train. As a result, she sustained multiple injuries, including the termination of her pregnancy. Both the railroad bridge and the tracks where she was struck are owned by Union Pacific. The railroad line at the point of her injury runs through Little Blue Trace Park (the "Park"), which is owned by Jackson County. The portion of the Park adjoining the railroad tracks where Ms. Sisk was injured is commonly referred to as "Ripley Junction." The Ripley Junction area of the Park includes a walking and bicycle trail that intersects the railroad

---

1. All statutory references are to the Revised Statutes of Missouri 2000.

tracks. The Park also contains a baseball field, picnic tables, open grassy areas, and wooded areas.

The railroad bridge on which Ms. Sisk was injured crosses the Little Blue River. In the Ripley Junction area of the Park, the bridge is the only means of access from the Park property on one side of the river to the Park property on the other side of the river. The land on the far side of the river, however, is undeveloped. Ms. Sisk was using the railroad bridge to cross to the far side of the Park property when she was struck. No physical barriers are located between the Park property and the railroad tracks, and no warning signs are posted on the Park property indicating where the Park property ends and the railroad property begins. In addition, the Park contains no warning signs alerting park patrons of the active train line or instructing them to stay off the railroad tracks.

As a result of her injuries, Ms. Sisk filed a petition for damages against Union Pacific and Jackson County, alleging that the personal injury to herself and the wrongful death of her unborn child was caused by the negligence of Union Pacific and Jackson County. Specifically, as to her claims against Jackson County, Ms. Sisk asserted that the operation of a public park with an active railroad line running through it, without any safeguards such as barriers or signs, constitutes a dangerous condition. Ms. Sisk also alleged that Jackson County was negligent in the design, construction, operation, and maintenance of a public park with an active railroad line running through it without providing any type of physical barrier or posting any warning signs. Ms. Sisk claimed that Jackson County's negligence proximately caused, in whole or in part, her injuries and the death of her unborn child and that it was reasonably foreseeable that the type of harm she

suffered could result from Jackson County's negligence.

Jackson County filed a motion for summary judgment, asserting the defense of sovereign immunity. The circuit court granted Jackson County's motion on January 23, 2003, finding that because Ms. Sisk's accident did not occur on land owned, controlled, or possessed by Jackson County, the county was entitled to sovereign immunity. The circuit court also determined, under Rule 74.01(b), that the "[j]udgment [was] final for purposes of appeal as to defendant Jackson County and there is no just reason for delay." Ms. Sisk filed this appeal.

## Final Judgment

Before reaching the merits of Ms. Sisk's appeal, it is necessary to address Jackson County's motion to dismiss the appeal, which claims that this court lacks jurisdiction because there is no final judgment. "A prerequisite to appellate review is that there be a final judgment." *Gibson v. Brewer*, 952 S.W.2d 239, 244 (Mo. banc 1997) (quoting *Boley v. Knowles*, 905 S.W.2d 86, 88 (Mo. banc 1995)). Without a final judgment, an appellate court lacks jurisdiction, and the appeal must be dismissed. *Id.*

A final judgment normally must resolve all issues in a case and leave nothing for future determination. *Id.* Rule 74.01(b), however, recognizes an exception for cases involving multiple claims or multiple parties. *Comm. for Educ. Equal. v. State*, 878 S.W.2d 446, 450 (Mo. banc 1994). In such cases, the circuit court can certify as final a partial judgment pertaining to "one or more but fewer than all of the claims or parties," but only if it expressly determines that there is "no just reason for delay." Rule 74.01(b). And even though the circuit court certifies its order as final for purposes of appeal, such a

determination is not conclusive. *Gibson*, 952 S.W.2d at 244. Rather, "[i]t is the content, substance, and effect of the order that determines finality and appealability." *Id.* "A judgment which resolves fewer than all legal issues as to any single 'claim for relief' is not final notwithstanding the trial judge's designation as such." *Comm. for Educ. Equal.*, 878 S.W.2d at 450. Accordingly, "[t]his court must still decide if the partial judgment actually qualifies as a final judgment." *Clay County ex rel. County Comm'n of Clay County v. Harley & Susie Bogue, Inc.*, 988 S.W.2d 102, 108 (Mo.App.1999).

For purposes of Rule 74.01(b), a judgment is final "only when the order disposes of a distinct 'judicial unit.'" *Gibson*, 952 S.W.2d at 244. A judgment that dismisses one of two defendants on the basis of a defense available to only the dismissed defendant constitutes a "distinct judicial unit" reviewable on appeal. *Yount v. Bd. of Educ. for City of St. Louis*, 712 S.W.2d 455, 456 (Mo.App.1986). *See also Gibson*, 952 S.W.2d at 245 ("When one defendant, but not all defendants, is dismissed from a case, the trial court may designate its judgment as final 'for purposes of appeal.'"); *Roth v. La Societe Anonyme Turbomeca France*, 120 S.W.3d 764, 771 n. 2 (Mo.App.2003) ("If at least one party's claim has been fully resolved, that matter may be appealed so long as the circuit court declares that it saw no just reason for delaying an appeal.").

Applying these principles to the facts of this case, Ms. Sisk's first amended petition alleged personal injury to her and the wrongful death of her unborn child caused by the negligence of Union Pacific and Jackson County. The defense of sovereign immunity, raised by Jackson County in its motion for summary judgment, is a defense available only to it. Finding the dangerous-condition-of-property waiver of

sovereign immunity inapplicable to Ms. Sisk's claims against Jackson County, the circuit court granted Jackson County's motion for summary judgment as to all claims against it. Thus, the circuit court resolved all legal issues surrounding Jackson County's liability and left open no remedies for Ms. Sisk against Jackson County. Additionally, following the circuit court's decision, Jackson County no longer remains in the litigation. Consequently, the circuit court's judgment disposed of a distinct "judicial unit" as to Ms. Sisk's claims against Jackson County.

If the circuit court's judgment disposes of a distinct judicial unit, "Rule 74.01(b) grants [the] circuit court[ ] the discretion to declare that aspect of the judgment final upon a finding of 'no just reason for delay.'" *Comm. for Educ. Equal.*, 878 S.W.2d at 453. Rule 74.01(b) is inapplicable absent such a finding. *Id.* In exercising its discretion, the circuit court is "granted broad latitude to act as a 'dispatcher' of the case." *Id.* (citing *Curtiss–Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 8, 100 S.Ct. 1460, 1465, 64 L.Ed.2d 1 (1980)). Moreover, this discretion is to be exercised "'in the interest of sound judicial administration.'" *Curtiss–Wright*, 446 U.S. at 8, 100 S.Ct. at 1465 (quoting *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 437, 76 S.Ct. 895, 900, 100 L.Ed. 1297 (1956)). It is an abuse of the circuit court's discretion if a finding of "no just reason for delay" is inconsistent with the circumstances of the case. *Comm. for Educ. Equal.*, 878 S.W.2d at 453.

Because Missouri Rule 74.01(b) was originally copied almost verbatim from Federal Rule 54(b), prior federal cases can give guidance to when a circuit court has properly exercised its discretion. *Id.* at 451 ("Where a federal rule has been construed by the federal courts and our Court thereafter adopts a rule on the same sub-

ject using identical language, there is no principled way to ignore the federal cases.") Under Federal Rule 54(b), the United States Supreme Court instructed that, in deciding whether there is no just reason to delay the appeal, the trial court must "take into consideration judicial administrative interests as well as the equities involved." *Curtiss–Wright*, 446 U.S. at 8, 100 S.Ct. at 1465. In considering judicial interests, the United States Supreme Court concluded that it was proper for the trial judge to consider factors such as "whether the claims under review were separable from the others remaining to be adjudicated and whether the nature of the claims already determined was such that no appellate court would have to decide the same issues more than once even if there were subsequent appeals." *Id.* The United States Supreme Court cautioned, however, that when considering the equities, because of the large number of possible situations, it was "reluctant either to fix or sanction narrow guidelines for the district courts to follow" in exercising their discretion in determining whether the equities weigh in favor of any just reason to delay the appeal. *Id.* at 10–11, 100 S.Ct. at 1466.

In Jackson County's motion to dismiss, however, it argues that fixed guidelines should govern our review. Specifically, Jackson County asserts that the four-factor test set forth in *Herod v. Hindman*, 96 S.W.3d 915, 918 (Mo.App.2003), should be applied when determining whether certification of a judgment under Rule 74.01(b) is proper. Applying this test to the facts of the case, Jackson County contends, compels the result that the trial court abused its discretion in certifying its judgment.

The four factors of the test propounded by Jackson County include:

(1) whether the action remains pending in the trial court as to all parties; (2) whether similar relief can be awarded in each separate count; (3) whether determination of the claims pending in the trial court would moot the claim being appealed; and (4) whether the factual underpinnings of all the claims are intertwined.

*Id.*

The Eastern District first adopted the four-factor "test," utilized by *Herod*, in *Jackson v. Christian Salveson Holdings, Inc.*, 914 S.W.2d 878, 883 (Mo.App.1996).[2] The sources cited by *Jackson* for the four-factor test were the Eastern District's earlier case of *Saganis–Noonan v. Koenig*, 857 S.W.2d 499, 501 (Mo.App.1993), and the United States Court of Appeals for the First Circuit's case of *Spiegel v. Trustees of Tufts College*, 843 F.2d 38 (1st Cir.1988). *Jackson*, 914 S.W.2d at 883. The four factors addressed by the court in *Saganis–Noonan* were derived from four factors considered important by the First Circuit in determining whether there was just reason for delay under Federal Rule of Civil Procedure 54(b). 857 S.W.2d at 501; *Spiegel*, 843 F.2d at 44–46.

*Spiegel* and *Saganis–Noonan*, however, expressly recognized that no rigid guidelines for making such a determination have been developed. In *Spiegel*, 843 F.2d at 43, the First Circuit Court of Appeals found that "[t]he process, tilted from the start against fragmentation of appeals, is necessarily case-specific. It entails an assessment of the litigation as a whole, and a

---

**2.** The Eastern District has also relied upon this four-factor test in a number of other cases. *See Landmark Am. Ins. Co. v. Paccar, Inc.*, 103 S.W.3d 894, 896 (Mo.App.2003); *Church of God in Christ Congregational of Mo.* *v. Secured Housing, Inc.*, 39 S.W.3d 55, 57 (Mo.App.2001); *Nooney v. NationsBank, N.A.*, 996 S.W.2d 783, 787–88 (Mo.App.1999); *Lynch v. Lynch*, 966 S.W.2d 345, 347 (Mo. App.1998).

weighing of all factors relevant to the desirability of relaxing the usual prohibition against piecemeal appellate review in the particular circumstances." Likewise, the Eastern District of this court in *Saganis–Noonan*, 857 S.W.2d at 501, found that:

> "[i]n reference to *Curtiss–Wright*, Commentators have noted that '[g]iven the wide range of discretion conferred on the trial judge in deciding whether there is no just reason for delay, the district court should feel free to consider any factor that seems relevant to a particular action, keeping in mind the policies the rule attempts to promote.' "

(quoting 10 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2659 (1983)).

Jackson County cites no cases from the Missouri Supreme Court, this district, or the Southern District where the Eastern District's four-factor test has been employed. This court is not inclined to adopt a "test," in light of the United States Supreme Court's admonition against setting up narrow guidelines for this determination. *See Curtiss–Wright*, 446 U.S. at 10–11, 100 S.Ct. at 1466. Nevertheless, the Eastern District's test includes valid factors to be considered in evaluating whether the trial court abused its discretion in certifying its judgment as final for purposes of appeal.

For example, in considering whether the claims under review are separable from the remaining claims as instructed by *Curtiss–Wright*, consideration must be given to whether the factual underpinnings of all the claims are intertwined, the fourth factor in the Eastern District's test. Here, the claim under review, Ms. Sisk's claim against Jackson County, is separable from her claim against Union Pacific, which remains to be adjudicated. She alleged that Jackson County created and maintained a dangerous condition at the Park based on the design of the Park and Jackson County's failure to warn. Her claim against Union Pacific is that it maintained a "dangerous condition on the tracks and the bridge at the Park and in operating trains thereon." The wrongful acts allegedly committed by Jackson County and Union Pacific are separate acts, and the duty each defendant allegedly breached in causing injury to Ms. Sisk is, likewise, separate.

While Jackson County correctly asserts that a single accident gave rise to the claims against both defendants, the factual basis of each claim derives from each individual defendant's negligence in creating or maintaining a dangerous condition and in failing to warn of the condition. As a result, the factual underpinnings of the claims against Jackson County and the claims against Union Pacific are not so inextricably intertwined that they cannot be separated. For example, the factual question whether a dangerous condition exists on property owned or controlled by Jackson County is separate and distinct from whether a dangerous condition exists on property owned or controlled by Union Pacific. Moreover, even though Ms. Sisk's injuries derive from one incident, the decision of whether Jackson County can be held liable for Ms. Sisk's injuries relies on different evidence than would be required to demonstrate Union Pacific's liability. Thus, the factual issues underlying the adjudicated claims are separate and not extricably intertwined with the remaining claims.

Moreover, the nature of the sovereign immunity issue is such that it is highly unlikely that an appellate court would have to decide the issue more than once. *See Curtiss–Wright*, 446 U.S. at 8, 100 S.Ct. at 1465. Because Jackson County is the only defendant that would be entitled to claim sovereign immunity, it is a discrete ques-

tion, the decision of which is not affected by any fact finding that will be the foundation for the disposition of claims against Union Pacific. Ensuing events in the progress of the case are unlikely to alter any of the parties' positions or the court's decision regarding sovereign immunity. An appellate answer in Jackson County's favor, that it was immune from liability, would end the case for Jackson County. An appellate answer in the other direction may allow the case to proceed against both defendants and each party's comparative fault assessed in the same proceeding. Therefore, the nature of the claims already determined was such that no appellate court would have to decide the same issues more than once even if there were subsequent appeals.

A balancing of the remaining factors included in the Eastern District's test also weighs in favor of certification. The factor of whether the action remains pending in the trial court as to all parties was previously considered in determining whether the partial judgment disposed of a judicial unit. As discussed above, the trial court's judgment disposed of all claims against Jackson County and Jackson County no longer remains in the litigation. Accordingly, this factor weighs in favor of certification.

Next, consideration of whether a determination of the claims pending in the trial court would moot the claim being appealed also weighs in favor of certification. Jackson County argues, however, that if Ms. Sisk prevails on her claims against Union Pacific, the claim being appealed would be moot because Ms. Sisk is entitled to only one recovery. While Jackson County is correct that Ms. Sisk is entitled to only one recovery, the question whether Jackson County is entitled to sovereign immunity would not become moot by a finding of liability on the part of Union Pacific be-cause the claims against Union Pacific and Jackson County are related to different acts of negligence. Likewise, if Union Pacific prevails on Ms. Sisk's claims of negligence, Ms. Sisk's claims against Jackson County would not be moot, absent a final determination on the question of sovereign immunity.

In addition, waiver of sovereign immunity is relevant to claims for contribution by joint tortfeasors. *See McNeill Trucking Co. v. Mo. State Highway & Transp. Comm'n*, 35 S.W.3d 846, 849 (Mo. banc 2001). Thus, even if Ms. Sisk were to prevail on her claims against Union Pacific, Union Pacific would still be entitled to bring a claim for contribution against Jackson County, either in this suit or in another action, raising again the question of Jackson County's immunity if the issue on appeal is not resolved. If the trial court's decision on the question of sovereign immunity were in error, it would be wasteful of judicial, as well as party, resources to litigate to completion all other claims before finding out that Jackson County was immune from liability and to require Union Pacific to relitigate the question of Jackson County's liability in a suit for contribution. *See Magnuson v. Kelsey–Hayes Co.*, 844 S.W.2d 448, 452–54 (Mo.App.1992) (claim for contribution and underlying tort claim are separate independent claims and can be maintained in separate actions); *Brown v. Harrison*, 637 S.W.2d 145 (Mo.App.1982) (defendant did not waive a claim for contribution and apportionment by seeking severance of those claims from underlying action).

Finally, Ms. Sisk seeks damages for her personal injury and the death of her unborn child in each count, jointly and severally, against both Union Pacific and Jackson County. Thus, her claims against Union Pacific and Jackson County would yield the same measure of damages.

Consequently, this factor, whether similar relief can be awarded in each separate count, weighs against certification of the appeal. Nonetheless, balancing all of the above considerations, this court finds that the trial court did not abuse its discretion in certifying its judgment final for purposes of appeal. Accordingly, the appeal is proper under Rule 74.01(b) and this court has jurisdiction over the issue raised. Jackson County's motion to dismiss the appeal is denied and this court now considers the merits of Ms. Sisk's appeal.

## Standard of Review

Appellate review of a summary judgment is *de novo*. *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). This court's criteria for ascertaining the propriety of summary judgment are the same as those that a trial court uses initially. *Id.* This court does not defer to the trial court's order granting summary judgment because the trial court's initial judgment is based on the record submitted and amounts to a decision on a question of law. *Id.* Summary judgment is appropriate where the moving party establishes a right to judgment as a matter of law and that no genuine issue of material fact exists. *Id.* at 378.

For movants who are the defending parties in a lawsuit, the *prima facie* showing required by Rule 74.04 is "necessarily different." *Id.* at 381. A defending party may establish a right to judgment, as a matter of law, by showing:

> (1) facts that negate *any one* of the claimant's elements facts, (2) that the non-movant, after an adequate period of discovery, has not been able to produce, and will not be able to produce, evidence sufficient to allow the trier of fact to find the existence of *any one* of the claim-

ant's elements, or (3) that there is no genuine dispute as to the existence of *each* of the facts necessary to support the movant's properly-pleaded affirmative defense.

*Id.*

## Sovereign Immunity

■ In her sole point on appeal, Ms. Sisk contends that the trial court erred in entering summary judgment in favor of Jackson County based on sovereign immunity because her injuries were caused by the negligent design and inadequate signage of real property owned by Jackson County. Specifically, Ms. Sisk argues that Jackson County's property is dangerous because the county negligently designed, constructed, and maintained the Park with an active railroad line running through it, without any safeguards such as warning signs or barriers.

■ Public entities, such as Jackson County, are generally immune from tort liability under the doctrine of sovereign immunity. *Moses v. County of Jefferson*, 910 S.W.2d 735, 736 (Mo.App.1995) (citing *Wood v. County of Jackson*, 463 S.W.2d 834 (Mo.1971)). The State of Missouri, however, has expressly waived the defense of sovereign immunity in two instances. The first instance, the negligent operation of a motor vehicle by a public employee, is inapplicable to this case. *See* section 537.600.1(1). The second instance in which Missouri has waived sovereign immunity is for injuries caused by a dangerous condition of a public entity's property. *See* section 537.600.1(2). To establish that Jackson County was not entitled to invoke sovereign immunity as a defense to this action, based upon the dangerous condition exception, Ms. Sisk was required to prove:

> (1) a dangerous condition of the property; (2) that the plaintiff's injuries directly resulted from the dangerous condi-

tion; (3) that the dangerous condition created a reasonably foreseeable risk of harm of the kind the plaintiff incurred; and (4) that a public employee negligently created the condition or that the public entity had actual or constructive notice of the dangerous condition. *Kanagawa v. State by and through Freeman,* 685 S.W.2d 831, 834–35 (Mo. banc 1985). Further, the statutory provisions that waive a public entity's sovereign immunity are to be narrowly construed. *Id.* at 834.

The dispositive issue in this case is whether Ms. Sisk was able to prove a "dangerous condition" of Jackson County's property. On this issue, the case of *Tillison v. Boyer,* 939 S.W.2d 471, 473 (Mo. App.1996), is particularly instructive. In that case, the plaintiff sued a county hospital after she was paralyzed when, while walking across the hospital parking lot, a dead tree near the hospital's property line, but on adjacent property, fell on her. 939 S.W.2d at 472. The hospital filed a motion to dismiss, claiming sovereign immunity. *Id.* The plaintiff, on the other hand, argued that the dead tree constituted a dangerous condition of the hospital's property and, therefore, the statutory exception to sovereign immunity was applicable. *Id.* The trial court granted the motion. *Id.* This court affirmed the trial court's judgment, noting that, because the petition acknowledged that the dead tree was not located on the hospital's property, "the hospital did not control any property of which the dead tree was a part." *Id.* at 473–74. Thus, this court held that the plaintiff's petition failed to allege a dangerous condition of the hospital's property and the hospital was entitled to sovereign immunity. *Id.* at 474. *See also Alexander v. State,* 756 S.W.2d 539 (Mo. banc 1988) (dangerous condition refers to defects in or on real and personal property of public entity; condition on public entity's proper-

ty dangerous because defect in physical condition of public property existed when placement of personal property, without intervention by third party, posed a physical threat to plaintiff); *Summitt by Boyd v. Roberts,* 903 S.W.2d 631 (Mo.App.1995) (property containing allegedly dangerous condition not owned or under exclusive control or possession of public entity and, therefore, dangerous condition waiver of sovereign immunity not applicable); *Claspill v. State Div. of Econ. Dev.,* 809 S.W.2d 87 (Mo.App.1991) (state not liable for conditions on property not owned by the state).

In addition, two cases expressly involving railroad crossings are instructive, *State ex rel. Div. of Motor Carrier & R.R. Safety v. Russell,* 91 S.W.3d 612, 616 (Mo. banc 2002), and *Rell v. Burlington N. R.R. Co.,* 976 S.W.2d 518, 519–20 (Mo.App.1998), *abr'g on other grounds by Joel Bianco Kawasaki Plus v. Meramec Valley Bank,* 81 S.W.3d 528 (Mo. banc 2002). In *Russell,* the plaintiffs sought damages against several defendants, including the Division of Motor Carrier and Railroad Safety (the "Division"), for the wrongful death of their son, which resulted from an accident at a railroad crossing. 91 S.W.3d at 614. The plaintiffs alleged that the railroad crossing was a dangerous condition for various reasons such as broken asphalt, potholes, loose gravel, and broken and loose railroad ties. The Division filed a motion to dismiss the plaintiffs' petition, asserting sovereign immunity because it did not own or control the railroad crossing. *Id.* at 615. The Supreme Court agreed, holding that, if the Division did not own the railroad crossing, nor have the railroad crossing under its exclusive control or possession, then it could not be subject to suit under the dangerous condition waiver. *Id.* at 616. Specifically, the Court held that "[f]or a dangerous condition waiver of sov-

ereign immunity to apply, the dangerous condition must 'describe, define, explain, denote or reference only and exclusively the physical defects in, upon and/or attending to *property of the public entity.*' " *Id.* (emphasis added).

Similarly, in *Rell,* 976 S.W.2d at 519–20, the plaintiff filed suit against the railroad company and St. Charles County for negligence resulting from a collision between his truck and a train at an intersection between a railroad crossing and a county road. The plaintiff alleged that the county failed to sufficiently warn motorists of a dangerous railroad crossing and permitted vegetation to obscure a warning sign and the railroad crossing. *Id.* at 520. This court held that the county was immune from liability because the plaintiff conceded that the railroad company owned the railroad tracks and easement property adjacent to the tracks, and that the county did not exercise exclusive possession or control over the property. *Id.* at 521–22. In addition, the court found that the county did not have a legal duty to maintain the tracks and the easement property. *Id.* at 522 (citing section 389.665.2).

Here, Ms. Sisk concedes that Jackson County does not own or control either the railroad tracks or the bridge, the allegedly dangerous condition. Thus, Jackson County has demonstrated that Ms. Sisk is unable to prove a dangerous condition on Park property. Ms. Sisk acknowledges the above case law and attempts to craft her claim of a dangerous condition on Park property in such a manner that it is not barred by these legal principles. Ms. Sisk

characterizes the design of the Park with an active railroad line running through it and the lack of signage as a dangerous condition of Jackson County's property. Her characterization, however, fails. The true nature of Ms. Sisk's claim is that the active railroad line makes the railroad tracks and bridge dangerous and the proximity of that dangerous condition to the Park property creates a duty to warn. In effect, properly characterized, Ms. Sisk's claims assert that Jackson County has a duty to warn of a dangerous condition on Union Pacific's property. As discussed above, Jackson County has no such duty and is not liable for allegedly dangerous conditions on adjacent property that it does not own or exclusively possess or control.[3]

A physical defect does not exist in the Park property, nor is there anything on or about the Park property that is dangerous. For property to be dangerous, there must be some defect, physical in nature, in the sovereign's property. *Russell,* 91 S.W.3d at 616; *Kanagawa,* 685 S.W.2d at 835 (dangerous condition refers to "a defect in the physical condition of public property"). Ms. Sisk is unable to prove a physical defect in or on Park property. Rather, she complains only about the location of Park property adjacent to the allegedly dangerous railroad track.

■ Furthermore, Ms. Sisk's claim that a dangerous condition is created on the Park property because Jackson County failed to place warning signs or barriers at the edge of its property, likewise, fails.

3. It is questionable whether Jackson County would have a legal duty to warn of the dangerous condition on Union Pacific's property even if it did not have the defense of sovereign immunity. In *Kibbons v. Union Electric Co.,* 823 S.W.2d 485, 488 (Mo. banc 1992), the Missouri Supreme Court held that a subservient landowner has no duty to warn or barricade against a dangerous condition on property controlled by the owner of an easement, even when the landowner has knowledge of the dangerous condition; a "landowner is only liable for those injuries caused by devices placed on the premises by the holder of the easement that are under the landowner's possession and control."

The "[f]ailure to perform an intangible act, whether it be a failure to supervise or warn cannot constitute a dangerous 'condition' of the 'property' for purposes of waiving sovereign immunity." *Russell,* 91 S.W.3d at 616. *See also Tillison,* 939 S.W.2d at 473. Thus, Ms. Sisk has failed to prove a dangerous condition of property owned or controlled by the county, an essential element of Ms. Sisk's claim. Jackson County is, therefore, immune from liability.

## Conclusion

Finding the trial court's judgment final for purposes of appeal, this court holds that the dangerous-condition-of-property exception to sovereign immunity is not applicable in this case because Ms. Sisk failed to prove a dangerous condition of property owned or controlled by Jackson County. The trial court, in granting summary judgment, found that Jackson County was entitled to sovereign immunity because Ms. Sisk's *injury* did not occur on property owned, controlled, or possessed by the public entity. It is the location of the dangerous condition, not the injury, which controls, so the trial court reached the correct result, but for the wrong reason. Nevertheless, this court "will affirm the trial court's summary judgment on any ground supported by the record, whether relied on by the trial court or not." *Payne v. City of St. Joseph,* 58 S.W.3d 84, 86 (Mo.App.2001). The judgment of the trial court granting Jackson County's motion for summary judgment is affirmed.

All concur.